Jonathan D. Waisnor (SBN 345801)
James M. Fee (*pro hac vice* forthcoming)
**LABATON KELLER SUCHAROW LLP**
140 Broadway, 34th Floor
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
jwaisnor@labaton.com
jfee@labaton.com

*Attorneys for Plaintiff Meshweida Carter*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| MESHWEIDA CARTER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF PHOENIX, INC., an Arizona corporation,<br><br>Defendant. | Case No.: ______________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Meshweida Carter ("Plaintiff"), on behalf of herself and all others similarly situated, asserts the following against Defendant The University of Phoenix, Inc. ("Defendant" or the "University of Phoenix"), based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

## SUMMARY OF ALLEGATIONS

1. Plaintiff brings this class action against the University of Phoenix—a private, for-profit university—for its failure to secure and safeguard highly sensitive and protected personally identifiable information ("PII"), including contact information (full names, email addresses, and phone numbers) and Social Security numbers.

2. In August 2025, an unauthorized third party exploited a vulnerability in the University of Phoenix's Oracle E-Business Suite ("EBS") software platform, copying and exfiltrating the highly sensitive PII of 3,489,274 individuals, including University of Phoenix students, alumni, employees, faculty, and suppliers (the "Data Breach").

3. Defendant University of Phoenix did not detect the Data Breach until three months later—on November 21, 2025—and did not disclose it publicly until December 2, 2025. And while Defendant has since installed Oracle patches to resolve the vulnerability, the damage has already been done: the type of data stolen—including Social Security numbers, bank account numbers, and routing numbers—can be reused long after the vulnerability is patched, leaving Plaintiff and Class members at serious risk of identity theft and financial fraud.

4. Plaintiff and Class members provided their PII to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep that information confidential and secure from unauthorized access. University of Phoenix derives substantial economic benefit from collecting Plaintiff's and Class member's PII and was well aware that it was a prime target for cybersecurity threats, like the Data Breach.

5. Defendants owed a duty to Plaintiff and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII against unauthorized access and disclosure. Defendant breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect Plaintiff's and Class members' PII from unauthorized access and disclosure.

6. Plaintiff brings this action on behalf of all California citizens whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiff and Class Members and (ii) effectively secure hardware and software containing protected PII using reasonable and effective security procedures free of vulnerabilities. Defendant's conduct constitutes, among other things, negligence and violates state statutes.

7. Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) the disclosure of their private information; (v) loss of access to their money and financial accounts; and (vi) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

8. Plaintiff seeks damages and injunctive relief requiring Defendant to adopt reasonably sufficient practices to safeguard the PII in Defendant's custody and control.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative class members defined below, and minimal diversity exists because a significant portion of putative class members are citizens of a state different from the citizenship of Defendant.

10. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in the State of California and in this District, and has continuous and systematic contacts with the State of California.

11. This Court also has specific personal jurisdiction over Defendant related to this action because Plaintiff's claims arise out of Defendant's contacts with students in this State and District.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

13. Plaintiff Meshweida Carter is a citizen and resident of the State of California and attended University of Phoenix from 2015 to 2017. In January 2026, Plaintiff received a data breach notification letter from the University of Phoenix dated December 22, 2025.

14. Defendant University of Phoenix is for-profit corporation incorporated in Arizona, with its principal place of business located at 4035 South Riverpoint Parkway, Phoenix, Arizona 85040-0723. Defendant is a private for-profit university that used Oracle's EBS software to store and maintain the PII of current and formers students, employees, faculty members, and suppliers.

## FACTUAL ALLEGATIONS

### I. Defendant's Business and Collection of PII

15. Defendant University of Phoenix is a private, for-profit higher education institution, offering online and in-person academic programs, with a focus on adult and non-traditional students seeking to advance their careers.

16. As part of its business, Defendant collects, uses, and retains large amounts of PII from its applicants, students, faculty, and employees, including social security numbers, bank information, tax return information, personal and family financial data, biometric information, health data, and payment card information.

17. Much of this data is stored on the University of Phoenix's Oracle EBS—a back-office software suite that companies (including universities) use to run their accounting, HR, payroll, procurement, and student-related financial functions, among other business functions.

18. The public financial filings of Defendant's parent corporation—Phoenix Education Partners, Inc.—detail the risks associated with the University of Phoenix's collection and retention of highly sensitive PII.

19. For instance, in its 2025 Form 10-K, Defendant acknowledges that its collection and retention of this PII "makes us and the systems or vendors we rely upon a target for cyber-attacks." Defendant also acknowledges that "[m]uch of this personal information is held and managed by third-party vendors, and as a result, [it] is vulnerable . . . and susceptible to operational and information security risks resulting from system failures and cybersecurity incidents of our third-party vendors, and the technology and services they rely on to provide services to [Defendant]."

20. Further, Defendant admits in its 2025 Form 10-K that "[i]f we fail to effectively assess and identify cybersecurity risks associated with the use of technology in our business operations, we may become increasingly vulnerable to such risks," and that the PII it collects is "generally higher risk and/or sensitive, which comes with higher regulatory scrutiny and makes [it] a bigger target for malicious

cyber threats." And Defendant acknowledges that "[o]ur size and the amount and sensitivity of personal data that we collect or otherwise process makes us a prominent target for cyber-attacks within the education industry."

21. Thus, Defendant understood the importance of keeping its customer's PII safe and is uniquely aware of the prevalence of Data Breaches suffered by institutions (like the University of Phoenix) that collect and retain highly sensitive PII.

22. Defendant also maintains a privacy policy on its website that describes its practices regarding the PII it collects and represents that it takes reasonable steps to secure this sensitive information, further demonstrating that Defendant understood the need to safeguard the PII entrusted to it.

## II. The Data Breach

23. On December 2, 2025, Defendant publicly announced on its website that it had experienced a cybersecurity incident involving Oracle EBS. That same day, Phoenix Education Partners, Inc. (Defendant's parent company) filed an 8-K with the U.S. Securities and Exchange Commission announcing the Data Breach.

24. Through these and other disclosures, it was revealed that between August 13 and 22, 2025, an unauthorized third-party exploited a previously unknown software vulnerability in Oracle EBS to exfiltrate certain data, including the PII of Plaintiff and Class members, from within Defendant University of Phoenix's Oracle EBS environment. As a result of the Data Breach, the hacker gained unauthorized access to highly sensitive PII, including names and contact information, dates of birth, social security numbers, and bank account and routing numbers, of 3,489,274 individuals, including University of Phoenix students, alumni, employees, faculty, and suppliers.

25. Defendant detected the Data Breach on November 21, 2025 and installed Oracle EBS software patches to remediate the vulnerability. Nevertheless, Plaintiff's and Class member's PII had already been extracted and the damage is therefore done.

26. Security researchers attribute the attack to the Russian-linked Clop ransomware group, which exploited a zero-day vulnerability in the Oracle EBS

tracked as CVE-2025-61882.[1] Clop has targeted this same flaw in a broader campaign affecting numerous other organizations.[2]

27. Clop's strategy is to steal sensitive information and threaten to leak it publicly unless victims pay ransom demands, therefore exposing Plaintiff and Class Members to significant risk of financial fraud and identity theft—and they must live with that threat forever.[3]

28. On December 22, 2025, Defendant sent a notice (the "Notice") to the Class Members regarding "a cybersecurity incident that may have affected your personal information." The Notice made clear that Class Members' "name and Social Security Number" may have been among the information included in the breach.

## III. Defendant's Obligations to Plaintiff and Class Members

29. University of Phoenix had obligations to Plaintiff and Class members to safeguard their PII and to protect that PII from unauthorized access and disclosure. These data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches of major companies prior to the Data Breach, including specifically those companies that collect and retain large volumes of highly sensitive PII, like the University of Phoenix does (as Defendant acknowledged in its financial filings).

30. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class members' PII, Defendant assumed legal and equitable duties, and knew, or should have known, that it was responsible for protecting Plaintiff's and Class members' PII from unauthorized disclosure.

31. Plaintiff and Class members provided their PII to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with

---

[1] Bogdana Zujic, *Clop ransomware group linked to 3.5M University of Phoenix breach,* MSN (Dec. 29, 2025).

[2] *Id.*

[3] *Id.*

its obligations to keep such information confidential and secure from unauthorized access and disclosure.

## IV. Defendant's Failure to Secure Plaintiff's and Class Members' PII

32. Despite being aware of the risk it faced of a security breach, Defendant did not use reasonable security procedures and practices to protect that highly sensitive PII it was maintaining for Plaintiff and Class members, which caused Plaintiff and Class members' PII to be exposed and exfiltrated by cyber criminals.

33. Indeed, Defendant breached its duties, obligations, and promises to Plaintiff and Class members by failing to properly maintain and adequately safeguard sensitive PII. Defendant's misconduct includes, but is not limited to, the following: (i) failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks; (ii) failing to adequately protect the PII it collects and retains in the ordinary course of its business; (iii) failing to properly monitor their own data security systems for existing instructions; and (iv) failing to adhere to industry standards for cybersecurity.

34. Defendant could have prevented this Data Breach by properly securing and encrypting the PII of Plaintiff and Class members and otherwise adopting industry-standard best practices to safeguard this valuable information.

## V. Value of Personally Identifiable Information

35. Individuals' PII is highly valuable to criminals, particularly the PII stolen here. Social Security numbers, for instance, are among the most concerning types of PII to have stolen because they can be misused in many fraudulent ways.

36. Indeed, Social Security numbers allow individuals to apply for credit cards, personal loans, mortgages, and other lines of credit, and they also can be used to obtain medical services and access government benefits. For this reason, PII—including Social Security numbers and bank information, especially when coupled with other personal information—has real economic value, and demands a much higher price on the black market than other types of information often stolen in data

breaches, like credit card information. For this reason, Social Security numbers are a high-value target for cybercriminals, especially when obtained in large volumes, because they are highly-sought-after assets that demand a premium on the black market.

37. The theft of a person's Social Security number has significant real-world consequences for the victim. For example, a bad actor can use a stolen Social Security number to access and obtain sensitive information about that person, apply for credit using the sensitive information in the person's name, and charge the credit to the maximum limit—severely damaging a person's credit history when the bills go unpaid. Among other forms of fraud, identity thieves can use Social Security numbers to obtain driver's licenses, medical services, and housing, or even give false information to law enforcement.

38. More troubling, a Social Security number is very hard to change once stolen, as it requires significant paperwork and evidence that the number is being misused. And even if a victim of identity theft changes her social security number, problems persist. As the U.S. Social Security Administration explains:

> You should know that other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So, using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.[4]

39. Worse yet, the fraudulent activity resulting from the theft of PII, including Social Security numbers, may not come to light for years. Identity thieves may hold stolen data for years before using it, requiring Plaintiff and Class members to monitor their financial accounts and credits for many years to come.

40. For all these reasons, the PII stolen in the Data Breach has significant value, as PII is a valuable property right. For example, Experian estimates that bank

[4] SOCIAL SECURITY ADMINISTRATION, Publication No. 05-10064, Identity Theft & Your Social Security Number (Oct. 2024).

account details (information that was stolen in the Data Breach) can sell for more than $4,000 on the Dark Web.[5]

41. As a result of the Data Breach, Plaintiff's and Class members' PII, which has an inherent market value in both legitimate and black markets, has been damaged and diminished by its unauthorized release to third-party actors, to whom it holds significant value. This transfer of value occurred without any consideration paid to Plaintiff or Class members for their property, resulting in an economic loss. Moreover, the PII is now readily available, and the rarity of Plaintiff's and Class members' PII has been lost, thereby causing additional loss of value.

42. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class members, including but not limited to names, contact information email addresses, Social Security numbers, bank account information and of the foreseeable consequences that would occur if Defendant's data security system and network was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class members as a result of a breach and the costs associated with being denied access to their money and financial accounts.

43. Plaintiff and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Defendant was fully aware of the unique type and the significant volume of sensitive PII it held, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

44. The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class members. The ramifications of

---

[5] Ben Luthi, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN (June 30, 2025), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/?msockid=03b658f6c6976d2c394f4cb5c7d86cf4.

Defendant's failure to safeguard the PII of Plaintiff and Class members are long-lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Class:

> All citizens of the State of California whose PII was compromised in the data breach publicly announced by Defendant on or about December 2, 2025. [6]

46. Excluded from each Class are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) the Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parent has a controlling interest and their current or former employees, officers, and directors; and (3) Plaintiff's counsel and Defendant's counsel.

47. **Numerosity:** The exact number of members of the Class is unknown and unavailable to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of millions of individuals, and the members can be identified through Defendant's records.

48. **Predominant Common Questions:** The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not limited to, the following:

(a) Whether Defendant's engaged in the misconduct alleged herein;

(b) Whether Defendant owed a duty to Class members to safeguard their PII'

[6] Plaintiff has defined the Class based on currently available information and hereby reserves the right to amend the definition of the Class, including, without limitation, the Class Period.

(c) Whether Defendant failed to adequately implement and maintain reasonable security procedures and monitoring practices appropriate for the sensitive information it collects and retains;

(d) Whether Defendant breached its duty to Class members to safeguard their PII;

(e) Whether Defendant violated state statutes;

(f) Whether Defendant's data security systems and monitoring processes complied with applicable law and were consistent with industry standards at all relevant times;

(g) Whether Defendant violated Plaintiff's and Class members' privacy rights;

(h) Whether Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon it by Plaintiff and Class members

(i) Whether Plaintiff and the Class members are entitled to equitable relief, including but not limited to, injunctive relief, restitution, and disgorgement; and,

(j) Whether Plaintiff and the Class members are entitled to actual, statutory, punitive or other forms of damages, and other monetary relief.

49. **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class. The claims of Plaintiff and the members of the Class arise from the same conduct by Defendants and are based on the same legal theories.

50. **Adequate Representation:** Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation and class actions, including litigations to remedy privacy violations. Plaintiff has no interest that is antagonistic to those of the Class, and Defendant has no defenses unique to any Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the

members of the Class, and they have the resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

51. **Substantial Benefits:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

52. Plaintiff reserves the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Negligence
### (On Behalf of Plaintiff and the Class)

53. Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

54. Defendant obtained Plaintiff's and Class members' PII.

55. Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class members' PII. Defendant required Plaintiff and Class members to provide their PII in order to obtain Defendant's services. Defendant collected, maintained, and stored Plaintiff's and Class members' PII and used it for commercial gain.

56. By collecting and maintaining sensitive PII, Defendant had a common law duty of care to use reasonable means to secure and safeguard the sensitive PII and to prevent disclosure of the information to unauthorized individuals. Defendant's duty

included a responsibility to implement processes by which it could detect a data breach of this type and magnitude in a timely manner.

57. Defendant owed a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class members' PII and to provide data security consistent with industry standards.

58. Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class members could and would suffer if the data were wrongfully disclosed.

59. By assuming responsibility for collecting and storing this data, Defendant had a duty of care to use reasonable means to secure and safeguard the data it collects—including Plaintiff and Class members' PII—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty includes, but is not limited to, maintaining an adequate data security system to reduce the risk of data breaches and cyber-attacks and implementing processes by which it could detect a breach of its security systems in a reasonably expeditious time period.

60. A breach of security, unauthorized access, and resulting injury to Plaintiff's and Class members' PII was reasonably foreseeable, particularly considering Defendant's inadequate security practices and Defendant's stated understanding of the risk it faced of a data breach.

61. Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and Class members and the critical importance of providing adequate security of that data.

62. Defendant's own conduct created a foreseeable risk of harm to Plaintiff and Class Members. Defendant's misconduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein.

63. Plaintiff and Class members had no ability to protect their PII that was in, and probably remains in, Defendant's possession.

64. Defendant was able to protect against the harm suffered by Plaintiff and Class members as a result of the Data Breach.

65. Defendant breached its duties to Plaintiff and Class members, and thus was negligent, by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class members' PII within Defendant's possession. And but for Defendant's negligence, Plaintiff and Class members would not have been injured. The negligent acts and omissions committed by Defendant include, but are not limited to (a) failing to adopt, implement, and maintain adequate security measures to safeguard PII; (b) failing to adequately monitor the security of its networks and systems; (c) allowing unauthorized access to Plaintiff's and Class members' PII; (d) failing to detect in a timely manner that Plaintiff's and Class members' PII had been compromised; and (e) failing to timely notify Plaintiff and Class members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft or other damages.

66. As a result of Defendant's ongoing failure to notify Plaintiff and Class members regarding the type of PII that has been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

67. Defendant's breaches of duty caused Plaintiff and Class members to suffer from identity theft, fraud, loss of time and money to monitor their finances for fraud, loss of access to their money and financial accounts, and loss of control over their PII.

68. As a result of Defendant's negligence and breach of duties, Plaintiff and Class members are in danger of present and continuing harm in that their PII, which is still in the possession of third parties, will need identity theft protection services and

credit monitoring services for their respective lifetimes, considering the immutable nature of the PII at issue, which includes Social Security numbers.

69. There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiff and Class members and the harm, or risk of imminent harm, suffered by Plaintiff and Class members. The PII of Plaintiff and Class members was stolen and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII, by adopting, implementing, and maintaining appropriate security measures.

70. Plaintiff seeks the award of actual damages on behalf of herself and the Class.

71. In failing to secure Plaintiff's and Class members' PII, Defendant is guilty of oppression, fraud, or malice, in that Defendant acted or failed to act with a willful and conscious disregard of Plaintiff's and Class Members' rights. Plaintiff, therefore, in addition to seeking actual damages, seeks punitive damages on behalf of himself and the Class.

72. Plaintiff seeks injunctive relief on behalf of the Class in the form of an order compelling Defendant to institute appropriate data collection and safeguarding methods.

## SECOND CLAIM FOR RELIEF
### Negligence *Per Se*
### (On Behalf of Plaintiff and the Class)

73. Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

74. The California Consumer Privacy Act ("CCPA"), specifically, Civil Code §§ 1798.81.5 and 1798.150, require that "[a] business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the

information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

75. Defendant violated the CCPA (and similar state statutes) by failing to use reasonable measures to protect PII and not complying with industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII that it obtained and stored and the foreseeable consequences of a data breach of that data.

76. Defendant's violation of the CCPA (and similar state statutes) constitutes negligence *per se*.

77. Plaintiff and Class members are consumers within the class of persons the CCPA (and similar state statutes) was intended to protect.

78. Moreover, the harm that has occurred is the type of harm the CCPA (and similar state statutes) was intended to guard against.

79. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have been injured as described herein, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
## Unjust Enrichment
## (On Behalf of Plaintiff and the Class)

80. Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

81. Plaintiff and Class members conferred a monetary benefit to Defendant by paying Defendant, and entrusting money to Defendant, for various services relating to its business.

82. Defendant knew that Plaintiff and Class members conferred a monetary benefit to Defendant by entering into a business relationship. Defendant

acknowledged and retained this benefit when it accepted the terms of this relationship with Plaintiff and Class members.

83. Defendant was supposed to use some of the monetary benefit provided to it from Plaintiff and Class members to secure the PII belonging to Plaintiff and Class members by paying for costs of adequate data management and security.

84. Defendant should not be permitted to retain any monetary benefit as a result of its failure to implement necessary security measures to protect the PII of Plaintiff and Class members.

85. Defendant gained access to Plaintiff's and Class members' PII through inequitable means because Defendant failed to disclose that it used inadequate security measures.

86. Plaintiff and Class members were unaware of the inadequate security measures and would not have provided their PII to Defendant had they known of the inadequate security measures.

87. To the extent that this cause of action is pleaded in the alternative to the others, Plaintiff and Class members have no adequate remedy at law.

88. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures

to protect the PII of Plaintiff and Class Members; (viii) loss of access to their money and financial accounts; and (ix) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class members.

89. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

90. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class members, proceeds from the monetary benefit that it unjustly received from them.

## FOURTH CLAIM FOR RELIEF
**California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of Plaintiff and the Class)**

91. Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

92. Defendant's acts and omissions as alleged herein emanated and directed from California.

93. By reason of the conduct alleged herein, Defendant engaged in unlawful and unfair business practices within the meaning of California's Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200, *et seq*.

94. Defendant collected, stored, and retained the PII of Plaintiff and Class members.

95. Defendant knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with regulations

and that would have kept Plaintiff's and Class members' PII secure and prevented the loss or misuse of that PII.

96. Defendant did not disclose at any time that Plaintiff's and Class members' PII was vulnerable to hackers because Defendant's data security measures were inadequate, and Defendant was the only one in possession of that material information, which Defendant had a duty to disclose.

***Unlawful Business Practices***

97. As detailed herein, Defendant violated the CCPA (which is a predicate legal violation for this UCL claim) by misrepresenting, by omission, the safety of its computer systems, specifically the security thereof, and its ability to safely store Plaintiff's and Class Members' PII.

98. Defendant also violated the CCPA by failing to implement reasonable and appropriate security measures or follow industry standards for data security.

99. If Defendant had complied with these legal requirements, Plaintiff and Class members would not have suffered the damages related to the Data Breach, and consequently from Defendant's failure to timely notify Plaintiff and Class Members of the Data Breach.

100. Defendant's acts and omissions as alleged herein were unlawful and in violation of, *inter alia*, the CCPA.

101. Plaintiff and Class members suffered injury in fact and lost money or property as the result of Defendant's unlawful business practices. In addition, Plaintiff's and Class members' PII was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value. Plaintiff and Class members have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, lost time-value of money in the form of lost use of credit lines while they were being replaced, and other expenses relating to identity theft losses or protective measures.

***Unfair Business Practices***

102. Defendant engaged in unfair business practices under the "balancing test." The harm caused by Defendant's actions and omissions, as described in detail above, greatly outweighs any perceived utility. Indeed, Defendant's failure to follow basic data security protocols and failure to disclose the inadequacies of Defendant's data security cannot be said to have had any utility at all. All of these actions and omissions were clearly injurious to Plaintiff and Class members, directly causing the harms alleged below.

103. Defendant engaged in unfair business practices under the "tethering test." Defendant's actions and omissions, as described in detail above, violated fundamental public policies expressed by the California Legislature. *See*, e.g., Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the law.

104. Plaintiff and Class members suffered injury in fact and lost money or property as a result of Defendant's unfair business practices. Plaintiff's and Class members' PII was taken and in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value. Plaintiff and Class members have also suffered consequential out-of-pocket losses for procuring credit freeze or protection services, identity theft monitoring, lost time-value of money in the form of lost use of credit lines while they were being replaced, and other expenses relating to identity theft losses or protective measures.

105. As a result of Defendant's unlawful and unfair business practices in violation of the UCL, Plaintiff and Class Members are entitled to damages, injunctive relief, and reasonable attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF

**Violation of the California Consumer Privacy Act**
**Cal. Civ. Code §§ 1798.100, et. seq. ("CCPA")**
**(On Behalf of Plaintiff and the Class)**

106. Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

107. As more personal information about consumers is collected by businesses, consumers' ability to properly protect and safeguard their privacy has decreased. Consumers entrust businesses with their personal information on the understanding that businesses will adequately protect it from unauthorized access and disclosure. The California Legislature has made clear: "The unauthorized disclosure of personal information and the loss of privacy can have devasting effects for individuals, ranging from financial fraud, identity theft, and unnecessary costs to personal time and finances, to destruction of property, harassment, reputational damage, emotional stress, and even potential physical harm."

108. As a result, in 2018, the California Legislature passed the CCPA, giving consumers broad protections and rights intended to safeguard their personal information. Among other things, the CCPA imposes an affirmative duty on businesses that maintain personal information about California residents to implement and maintain reasonable security procedures and practices that are appropriate to the nature of the information collected. Defendant failed to implement such procedures which resulted in the Data Breach.

109. The statute also requires "[a] business that discloses personal information about a California resident pursuant to a contract with a nonaffiliated third party . . . [to] require by contract that the third party implement and maintain reasonable security

procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.81.5(c).

110. Section 1798.150(a)(1) of the CCPA provides:

> Any consumer whose nonencrypted and nonredacted personal information, as defined [by the CCPA] is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for . . . [statutory or actual damages,] (B) injunctive or declaratory relief[, and] (C) any other relief the court deems proper.

111. Plaintiff and Class members are "consumer[s]" as defined by Civ. Code § 1798.140(i) because they are "natural person[s] who [are] California resident[s], as defined in Section 17014 of Title 18 of the California Code of Regulations, as that section read on September 1, 2017."

112. Defendant is a "business" as defined by Civ. Code § 1798.140(d) because Defendant:

(a) is a "sole proprietorship, partnership, limited liability company, corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners";

(b) "collects consumers' personal information, or on the behalf of which is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information";

(c) does business in California; and

(d) has annual gross revenues in excess of $25 million; annually buys, receives for the business' commercial purposes, sells or shares for commercial purposes, alone or in combination, the personal information of 100,000 or more consumers, households, or devices; or derives 50 percent or more of its annual revenues from selling consumers' personal information.

113. The PII taken in the Data Breach is personal information as defined by Civil Code § 1798.81.5(d)(1)(A) because it contains Plaintiff's and Class members unencrypted first and last names and Social Security numbers, among other information.

114. Plaintiff and Class members provided to Defendant their nonencrypted and nonredacted personal information as defined in § 1798.81.5 in the form of their PII.

115. Plaintiff and Class members' PII was subject to unauthorized access and exfiltration, theft, or disclosure because their PII, including name and contact information was wrongfully taken, accessed, and viewed by an unauthorized third party.

116. Defendant, as a "business" covered by the CCPA, owed a duty to Plaintiff and Class members to implement and maintain reasonable security procedures and practices to protect the PII of Plaintiffs and Class members.

117. Defendant breached this duty. The fact that Plaintiff's and Class members' PII was accessed without authorization establishes that Defendant did not take adequate data security measures to store and protect the PII it collected and retained. Indeed, the Data Breach occurred as a result of Defendant's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect Plaintiff's and Class members' PII. Defendant failed to take adequate security measures to protect Plaintiff and Class members' PII.

118. As a direct and proximate result of Defendant's acts and omissions, Plaintiff and Class members were subjected to unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violation of the duty

119. Plaintiff and Class members are at high risk of suffering, or have already suffered, injuries that cannot be remedied monetarily, such as reductions to their credit scores and identity theft. As such, the remedies at law available to Plaintiff and Class members are wholly inadequate by themselves.

120. The full extent of the existing and potential harm caused by Defendant's failure to protect PII cannot be remedied by monetary damages alone because monetary compensation does nothing to prevent the reoccurrence of another data breach in the future.

121. On behalf of the Class, Plaintiff seeks injunctive relief, including public injunctive relief, declaratory relief, and any other relief as deemed appropriate by the Court.

122. On or about January 29, 2026, Plaintiff provided Defendant with written notice of its violations of the CCPA, pursuant to Civil Code § 1798.150(b)(1). *See* Ex. A. If Defendant fails to respond, or has not cured, or is unable to cure the violation within 30 days thereof, Plaintiff will amend this Complaint to seek all relief available under the CCPA including damages to be measured as the greater of actual damages or statutory damages in an amount up to seven hundred and fifty dollars ($750) per consumer per incident. *See* Cal. Civ. Code §§ 1798.150(a)(1)(A) & (b).

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff on behalf of herself and the proposed Class respectfully requests that the Court enter an order:

A. Certifying the Class and appointing Plaintiff as Class Representative;

B. Finding that Defendant's conduct was unlawful as alleged herein;

C. Awarding declaratory relief against Defendant;

D. Awarding such injunctive and other equitable relief as the Court deems just and proper;

E. Awarding Plaintiff and the Class members statutory, actual, compensatory, consequential, punitive, and nominal damages, as well as

restitution and/or disgorgement of profits unlawfully obtained;

F. Awarding Plaintiff and the Class members pre-judgment and post-judgment interest;

G. Awarding Plaintiff and the Class members reasonable attorneys' fees, costs, and expenses; and

H. Granting such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Dated: January 29, 2026

Respectfully submitted,

*/s/ Jonathan D. Waisnor*

Jonathan D. Waisnor (SBN 345801)
James M. Fee (*pro hac vice* forthcoming)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
jwaisnor@labaton.com
jfee@labaton.com

James M. Wagstaffe (SBN 95535)
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
6633 Bay Laurel Place
Avila Beach, CA 93424
Telephone: (805) 543-0990
Fax: (805) 543-0980
wagstaffe@ammcglaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2026, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: January 29, 2026
New York, New York

*/s/ Jonathan D. Waisnor*
Jonathan D. Waisnor